**UNITED STATES of America, Plaintiff,**

v.

**Theodore EDWARDS, Jr., and Richard J. Bates, Defendants.**

**No. S74–1CR.**

United States District Court, E. D. Missouri, Southeastern Division.

Oct. 23, 1974.

Donald J. Stohr, U. S. Atty., Terry Adelman, Asst. U. S. Atty., St. Louis, Mo., for plaintiff.

Norman S. London, London & Greenberg, St. Louis, Mo., for defendants.

### JUDGMENT

WANGELIN, District Judge.

This criminal action was initiated by an Indictment filed on January 10, 1974.

The Indictment charges that the defendants Edwards and Bates devised a scheme and artifice to defraud Mr. Herbert Seibel, Sr. of $15,000. It was also charged in the Indictment that the defendants Edwards and Bates did transport Mr. Herbert Seibel, Sr. from Poplar Bluff, Missouri, to East St. Louis, Illinois, to carry out the scheme for defrauding, these actions being in violation of 18 U.S.C. § 2314.

Both defendants pleaded not guilty to the aforesaid charges.

These actions are before this Court for trial as both defendants waived their right to a trial by jury. Defendants submitted joint motions for; discovery and inspection, production of favorable evidence, to dismiss the Indictment, to produce statements pursuant to the Jencks Act, 18 U.S.C. § 3500, for a bill of particulars and for production of records of Grand Jury vote and voting procedures and to dismiss the Indictment not properly voted upon by the Grand Jury. Such motions were denied on April 19, 1974. Trial in this matter was held on June 6th and 7th, 1974.

The Court being fully advised of the premises, makes the following findings of fact and conclusions of law.

### General Findings

The Court finds the defendants, Theodore Edwards, Jr., guilty of the violation charged in the Indictment filed in Criminal Action No. S 74–1 CR.

The Court finds the defendant, Richard J. Bates, guilty of the violation charged in the Indictment filed in Criminal Action No. S 74–1 CR.

### Special Findings

1. Mr. Herbert Seibel, Sr., the victim, was vacationing at Doniphan, Missouri, and went to Corning, Missouri, to buy feeder pigs on June 1, 1972.

2. At Corning, Missouri, Mr. Seibel was accosted by defendant Bates who told him he knew a man who had pigs for sale (defendant Edwards).

3. There were no pigs for sale, but a game of three-card monte * was suggested. The dealer was one Johnny Lee Oliver.

4. When invited to play at Corning, Mr. Seibel said he only had $60 or $70 but in the course of discussion said that he could cash a check for $15,000.

5. Oliver then wagered $1000 (a 10 to 1 wager) that Seibel could not cash the check.

6. Defendant Edwards put up $100, Defendant Bates held the stakes of $1100 including wrist watches from all concerned and all parties (Seibel, Edwards, Bates and Oliver) agreed to meet at an auction barn in Poplar Bluff, Missouri, on June 2, 1972.

7. Edwards then rented an automobile from an Avis Rent-A-Car at 3:32 a. m. in Memphis, Tennessee, on June 2, 1972, and he and Bates appeared at the auction barn at approximately 8:00 or 9:00 a. m. on June 2, 1972.

8. At the auction barn in Poplar Bluff, Missouri, Oliver stated that he could not go with the parties (Seibel, Bates and Edwards) to cash the check since he had to be in East St. Louis, Illinois.

9. As the parties drove away from the auction barn in Poplar Bluff, Missouri, an acquaintance of Seibel's by the name of Ernest Beline took down the license number of the car. That license number corresponded with the license number of the car that defendant Edwards rented in Memphis, Tennessee.

10. Seibel then went to Bloomsdale, Missouri, where he obtained a cashier's check drawn on the Bank of Bloomsdale for $15,000.

---

* Three card monte is a game involving the deuce of clubs, deuce of spades and the ten of diamonds. The cards are faced up and then faced down and as the dealer moves the cards back and forth rapidly, the bettor bets even money that he can pick the 10 of diamonds. A variation involving three cups and a small ball is known as the shell game.

11. Defendants Bates and Edwards then drove Mr. Seibel to East St. Louis, Illinois.

12. In East St. Louis, Illinois, Mr. Oliver refused to pay the bet because the check had not been cashed.

13. Edwards then took Mr. Seibel to the First National Bank in St. Louis, Missouri, where the check was cashed. The cash was paid to Mr. Seibel in $100 bills.

14. Defendant Edwards then drove Mr. Seibel back across the river and they there met defendant Bates and Mr. Oliver at the National Stockyards.

15. At that time defendant Edwards wagered the previous $1100 stakes in a three-card monte game and proceeded to lose the $1100.

16. The $15,000 of Mr. Seibel was then wagered and lost by defendant Edwards.

17. The so-called game of three-card monte took place in the automobile rented by defendant Edwards between two trailers at the National Stockyards in East St. Louis, Illinois, and other than Mr. Seibel, defendants Edwards and Bates and Mr. Oliver, there were one or two more people present.

18. As a result of a heated discussion, Mr. Seibel was told by defendants Edwards and Bates to go to a nearby tavern and wait there until they (defendants Bates and Edwards) got his money back.

19. No one ever came to the tavern.

20. Later, during an FBI investigation of the transaction from which this case arose, defendant Edwards signed a waiver of rights form. After signing that waiver, Mr. Edwards admitted that he participated in the transaction from which this action arose and that defendant he (defendant Edwards) would attempt to raise $15,000 concerning this matter.

## Conclusions of Law

The Indictment against defendants Edwards and Bates charges them with the violation of 18 U.S.C. § 2314 which provides that:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or by obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transports or causes to be transported, or induces any person to travel in or to be transported in interstate commerce in the execution or concealment of a scheme or artifice to defraud that person of money or property having a value of $5,000 or more . . .
>
> shall be fined not more than $10,000 or imprisoned not more than 10 years or both.

From the evidence it is clear that the defendants Edwards and Bates had the intent to defraud Mr. Seibel and did induce him to travel or be transported in interstate commerce in the execution of their scheme to defraud him of the $15,000.

■ It is quite obvious to this Court as the trier of fact that the game of three-card Monte which was played in East St. Louis, Illinois, was a scheme or artifice that was devised by the defendant to defraud Mr. Herbert Seibel, Sr. of his money. Under the holding of United States v. England, 480 F.2d 1266, 1269 (5th Cir., 1973), and United States v. Steiner Plastics Manufacturing Company, 231 F.2d 149, 152 (2nd Cir., 1956). It is not necessary to show that the card game in which defendants engaged was rigged or manipulated, but merely that they used this device to get the victim to depart with his money. The actions of the defendants in telling Mr. Seibel to go to the tavern and wait and they would then bring him the money has all the characteristics of the classic confidence scheme known as the "pigeon drop". The entire course of action of the defendants as shown by the evidence indicates to the Court that the total thrust of defendants' conduct was to defraud Mr. Seibel.

This Court as the trier of fact also notes that both defendants, after being given what is known commonly as the *Miranda* warning, and after having been duly advised of their rights, and signing a waiver of rights form, testified to FBI Agent Havens that they had been involved in the transaction with Mr. Seibel in Poplar Bluff, Missouri. The fact that both defendants admitted that they had engaged in the transaction with Johnny Lee Oliver, the dealer of the three-card monte game and were attempting to raise $15,000 is very significant and indicates to this Court as the trier of fact that an inference of guilt is not unwarranted.

■ The evidence presented to this Court during the course of the trial is of such an overwhelming nature and so persuasive as to convince the Court that both defendants are guilty of the conduct charged. While none of the evidence is a matter of direct proof the circumstantial weight of the evidence is so great as to approach direct proof. As the 8th Circuit stated in United States v. Smallwood, 443 F.2d 535 (1971):

> Criminal intent and guilty knowledge relate to the condition of the mind. Ordinarily, of course, one who engages in conduct of character similar to that presented . . . does not proclaim his intent to defraud innocent victims. Since the condition of the mind is rarely susceptible of direct proof, recourse must be had to all pertinent circumstances. 443 F.2d at 541.

The sum of the evidence indicates to this Court that the defendants Edwards and Bates did devise or intend to devise a scheme to defraud Mr. Herbert Seibel, Sr. and did transport him in interstate commerce in the execution of a scheme to defraud him of $15,000.

Accordingly, his Court finds that the defendants, Theodore Edwards, Jr. and Richard J. Bates, are guilty beyond a reasonable doubt as to the charges in the Indictment.