[Crim. No. 11212. Fourth Dist., Div. One. Oct. 1, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
THOMAS EUGENE MAYERS, Defendant and Appellant.

COUNSEL

Appellate Defenders, Inc., under appointment by the Court of Appeal, Elizabeth Schulman and Paul Bell for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, John W. Carney and Richard D. Garske, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**STANIFORTH, J.**—The jury convicted Thomas Eugene Mayers of participating and operating a game of three-card monte (Pen. Code, § 332) and conspiracy to cheat and defraud another in a three-card monte game (Pen. Code, § 182, subd. 4). Mayers was granted three years' probation upon the condition he (1) serve 365 days in local custody, (2) not participate in three-card monte games, and (3) submit his personal property at home to search at any time by any law enforcement officer.

Mayers appeals the judgment contending (1) a defendant charged with a misdemeanor violation of Penal Code section 332 cannot also be charged with conspiracy to commit the identical offense, (2) a conviction of conspiracy cannot stand where the charges against the only coconspirator were dismissed, and (3) the search and seizure provision of Mayers' probation is improper, violating the rule of *People* v. *Keller* (1978) 76 Cal.App.3d 827, 838 [143 Cal.Rptr. 184].

### FACTS

Mayers and Charles Jackson were observed by Vice Officer Victor E. Schuman as they conducted a game of three-card monte aboard a bus. Schuman testified that three-card monte originated in the 1800's as a variation of the "pea in the thimble" game. The game uses a combination of two black cards and one red, or the reverse. The cards are bent into tent fashion for easy handling, and each card is manipulated with a different finger by the dealer in order to give a false appearance as to where the winning (odd) card has been placed after the shuffle. In addition to the dealer, there are minimally two other participants in the game, a shill associated with the dealer and a mark or chump. According to Schuman's expertise, the card scheme cannot be perpetrated without the collaboration of the dealer and shill.

A shill's function includes verbally encouraging onlookers to participate, placing enticing bets, as well as distracting the crowd from the

dealer's sleight of hand. Mayers acted in classic capacity as shill, picked up one of the two black cards and tossed it over Jackson's shoulder. As Jackson turned around to retrieve it, Mayers bent up the corner of the red card in full view of the onlookers. Onlooker Hart, the mark, believed he now knew the correct card but was unable to detect the dealer's sleight of hand. He bet and lost—was defrauded of—$80. When the bus stopped, Mayers was arrested for participating as the shill in this confidence scheme. Jackson slipped away into the crowd and was not caught until much later. The action against Jackson was ultimately dismissed for want of prosecution.

Mayers appeals the judgment.

## DISCUSSION

## I

Mayers contends the specific provision of Penal Code section 332[1] proscribing "three-card monte" must prevail over the general sanction against conspiracy to defraud embodied in section 182, subdivision 4.

Section 332 in pertinent part provides: "Every person who by the game of 'three-card monte,' so-called, or any other game, device, sleight of hand,...fraudulently obtains from another person money or property of any description, shall be punished as in case of larceny of property of like value." Under the plain explicit language of this section, the law governing *larceny* (Pen. Code, §§ 486, 487) determines whether a particular "three-card monte" scam constitutes a misdemeanor or a felony. Therefore, if the value of the property taken was $200 or less, the offense is classified as petty theft—a misdemeanor. (§§ 486, 487.)

The substantive act (a three-card monte scam) charged against Mayers was for an amount less than $200, a misdemeanor punishable by maximum of six months in the county jail and/or a $1,000 fine.

Section 182 provides in pertinent part: "If two or more persons conspire:

". . . . . . . . . . . . . . . .

---

[1]All references are to the Penal Code unless otherwise specified.

"4. To cheat and defraud any person of any property, by any means which are in themselves criminal, or to obtain money or property by false pretenses or by false promises with fraudulent intent not to perform such promises.

". . . . . . . . . . . . . .

"They are punishable as follows:

". . . . . . . . . . . . . .

"When they conspire to do an act described in subdivision 4 of this section, they shall be punishable by imprisonment in the state prison, or by imprisonment in the county jail for not more than one year, or by a fine not exceeding five thousand dollars ($5,000), or both."

█ It is a firmly established principle where specific conduct is prohibited by a special statute, a defendant cannot be prosecuted under a general statute. (*In re Williamson* (1954) 43 Cal.2d 651, 654 [276 P.2d 593]; *People v. Gilbert* (1969) 1 Cal.3d 475, 479 [82 Cal.Rptr. 724, 462 P.2d 580]; *People v. Ali* (1967) 66 Cal.2d 277, 279 [57 Cal.Rptr. 348, 424 P.2d 932]; *In re Greenfield* (1970) 11 Cal.App.3d 536 [89 Cal.Rptr. 847]; *People v. Churchhill* (1967) 255 Cal.App.2d 448, 452 [63 Cal.Rptr. 312] (special statute § 484a relating to credit card offenses precludes prosecution under general statutes); *People v. Fiene* (1964) 226 Cal.App.2d 305, 308 [37 Cal.Rptr. 925] (special statute § 537 making it a crime to defraud an innkeeper supersedes and bars prosecution for petty theft); *People v. Haydon* (1951) 106 Cal.App.2d 105, 108 [234 P.2d 720] (general statute § 72, making false claims a felony, held repealed *pro tanto* by special Unemp. Ins. Code section making false statements a misdemeanor); *In re Williamson, supra,* 43 Cal.2d 651 (general statute § 182, conspiracy statute held inapplicable in light of Bus. & Prof. Code, § 7030 making it a misdemeanor to conspire to act as a contractor without a license); *People v. Silk* (1955) 138 Cal.App.2d Supp. 899, 900 [291 P.2d 1013] (Welf. & Inst. Code, § 2007, prohibiting fraudulently obtaining old age pension aid, held controlling over § 484, on false pretenses); *People v. Wood* (1958) 161 Cal.App.2d 24, 25 [325 P.2d 1014] (former Veh. Code, § 131 subd. (d), misdemeanor to make false statement to Department of Motor Vehicles supersedes § 115, making it a felony to file a false instrument).)

It was explained in *In re Williamson, supra*, 43 Cal.2d 651, 654: "'It is the general rule that where the general statute standing alone would include the same matter as the special act, and thus conflict with it, the special act will be considered as an exception to the general statute whether it was passed before or after such general enactment. . . .' [Citations.]" (See *Warne* v. *Harkness* (1963) 60 Cal.2d 579, 588 [35 Cal. Rptr. 601, 387 P.2d 377].)

The Court of Appeal in *Williams* v. *Superior Court* (1973) 30 Cal. App.3d 8 [106 Cal.Rptr. 89], applied these general principles in a fact-legal matrix where a prostitute was charged with a felony conspiracy to commit prostitution and disorderly conduct, a misdemeanor. (§ 647, subd. (b).) The charged coconspirator was the pimp who solicited for Williams. The court held "[t]he use of the conspiracy law in such situation becomes a device for defeating the legislative intent to impose a lesser penalty upon prostitution than upon pimping, or to impose a greater penalty for the substantive offense of prostitution than was established by the Legislature." (*Id.*, at p. 15.) Thereupon the court dismissed the conspiracy charge.

The foregoing rule is necessary to prevent a general statute from swallowing up the exceptions contained in specific enactments. █ Section 332 makes Mayers' offense a misdemeanor. By simple logic, if section 182 is applicable under these narrow facts, any section 332 misdemeanor violation would be automatically elevated to a felony by applying the general law of section 182, subdivision 4.[2] Noteworthy was the Legislature's revision in the year 1880 of section 332 from a pure felony statute to one which provided for "punish[ment] as in case of *larceny* of property of *like value*." (§ 332; italics added.) Punishment here as a section 182, subdivision 4, felony would render this legislative amendment void.

Nor is respondent's argument section 332's language "every *person*" persuasive to establish the Legislature's intention a game of "three-card monte" involving the concerted effort of a dealer and shill is an offense

---

[2]Transformation of misdemeanor offenses to felonies by application of the law of conspiracy has been criticized as obsolete. Dispelling the "group danger" rationale that all persons combining to commit even a petty offense are more dangerous than individual offenders, one commentator observes conspiracy law is an inexcusably clumsy way to provide increased punishment against organized crime. "Conspiracy makes the individual...bettor just as much a felon as the professional manager." (Johnson, *The Unnecessary Crime of Conspiracy* (1973) 61 Cal.L.Rev. 1137, 1145.) (See dissent in *People v. Osslo* (1958) 50 Cal.2d 75, 106 [323 P.2d 397].)

of greater culpability punishable as a section 182 conspiracy. A careful reading of 332 reveals a specific legislative sanction of fraudulently conducted games of which three-card monte is but one. Many other fraudulent devices can be conducted without concerted effort and are unlike "the old, familiar trick, by the defendant and his confederate" even though the use of card games like three-card monte commit larceny. (Cf., *People* v. *Frigerio* (1895) 107 Cal. 151, 152 [40 P. 107].) "While the cards are manipulated by one person alone, who is commonly called the dealer, the game is generally known and understood to be a confidence game, and is also declared by the statute to be a confidence game or swindle known as 'three-card monte.'" (*State* v. *Edgen* (1904) 181 Mo. 582 [80 S.W. 942, 944]; *United States* v. *Edwards* (E.D.Mo. 1974) 394 F.Supp. 1288, 1290.) According to the chief prosecution witness, three-card monte requires the concerted effort of a dealer and shill. Punishment as a conspiracy would void section 332's specifically sanctioned misdemeanor punishment of three-card monte where the value of defrauded property did not exceed $200.

## II

A separate legal doctrine supports dismissal of the conspiracy charge. ■ Where the cooperation of two or more persons is necessary to the commission of the substantive crime, and there is no ingredient of an alleged conspiracy that is not present in the substantive crime, then the persons necessarily involved cannot be charged with conspiracy to commit the substantive offense and also with the substantive crime itself. (16 Am.Jur., Conspiracy, § 6, p. 221; *People* v. *Keyes* (1930) 103 Cal.App. 624, 646 [284 P. 1096] (opn. by Sup.Ct. in denying hg.) This is the "concert of action rule" or Wharton's Rule. (1 Anderson, Wharton's Criminal Law and Procedure (1957) p. 191.) The classic Wharton's Rule has been applied to crimes characterized by a general congruence of the agreement and the completed offenses. The rule is considered in modern legal thinking as an aid in construction of statutes, a presumption that the Legislature intended the general conspiracy section be merged with the more specific substantive offense. (*Iannelli* v. *United States* (1975) 420 U.S. 770, 785-786 [43 L.Ed.2d 616, 627-628, 95 S.Ct. 1284, 1293].) Thus Wharton's Rule further substantiates our earlier conclusion that the specific conduct prohibited, made a misdemeanor by a special statute, cannot be prosecuted under a general statute punishing the identical conduct as a felony. (Cf., Case Notes, *Criminal Law, Conspiracy, Wharton's Rule and Exceptions* (1950) 23 So. Cal.L.Rev. 262, 263.)

Arguments concerning the technical inapplicability of Wharton's Rule (see *Hutchins* v. *Municipal Court* (1976) 61 Cal.App.3d 77, 90 [132 Cal.Rptr. 158]) depend for validity upon the definition and exceptions engrafted upon the rule. Such academic arguments are without substance when weighed against judicial aversion to a sub silentio repeal of specific critical portions of Penal Code section 332—by the general conspiracy section 182, subdivision 4.

The People's syllogism does not withstand scrutiny. If it is impossible to have three-card monte without concerted effort amounting to conspiracy and conspiracy is punishable as a felony (*People* v. *Koch* (1970) 4 Cal.App.3d 270, 276 [84 Cal.Rptr. 629]), then the result is section 332's provision for punishment of misdemeanor three-card monte would be stricken from the statute books by a prosecutorial sleight of hand in charging a conspiracy. (Cf., 91 Am.L.Rev. 1148, 1159.) Mayers' conviction for conspiracy must be reversed,[3] the conspiracy charge dismissed and the misdemeanor remanded to the municipal court for appropriate action. (*In re McKinney* (1968) 70 Cal.2d 8, 13 [73 Cal.Rptr. 580, 447 P.2d 972].)

## III

■ For guidance of the municipal court upon any retrial and conviction, we resolve Mayers' assertion the search and seizure condition of probation was not reasonably related to Mayers' offense of being a shill in a game of three-card monte. This condition violates the rule announced by this court in *People* v. *Keller* (1978) 76 Cal.App.3d 827 [143 Cal.Rptr. 184], where we stated: "(3) [T]he condition of probation must be 'directly' or 'reasonably' related to the crime proved to have been committed; (4) there must exist a 'reasonable relationship' between the condition imposed and deterring future similar criminality; (5) where the terms of probation authorize an invasion of a constitutional right, the condition must be 'narrowly drawn'; to the extent it is not reasonably related to the offense to which the probationer pleaded it is overbroad; (6) the broad power granted the sentencing judge does not authorize through a 'consent' or 'waiver' process the imposition of conditions of probation for 'rehabilitative' purposes not related to the offense of which the probationer stands convicted, no matter how superficially rational they appear; and (7) both the statute and Constitution

---

[3]Due to this disposition, we need not resolve Mayers' alternative contention that a conspirator's conviction may not stand after dismissal of charges against the only coconspirator.

mandate the conditions be *reasonable*, reasonable in proportion, as well as reasonably related, to the crime committed." (*Id.*, at p. 838; *In re Martinez* (1978) 86 Cal.App.3d 577, 583 [150 Cal.Rptr. 366].)

Bound up in this notion of reasonable relationship is the aim of the condition of probation to deter similar violations in the future. (*People v. Keller, supra*, 76 Cal.App.3d 827, p. 837.) Significantly the instant condition lacks a proximal link to the state's interest in thwarting Mayers' participation in future games of three-card monte. This crime is not a crime of possession. Moreover, the court declined to forbid Mayers' otherwise lawful possession of playing cards. In any case a shill in three-card monte need never possess playing cards.

Judgment reversed. Cause remanded with directions to dismiss the conspiracy charge and remand the misdemeanor charge to the municipal court for appropriate action.

Brown (Gerald), P. J., and Lord, J.,* concurred.

A petition for a rehearing was denied October 20, 1980, and respondent's petition for a hearing by the Supreme Court was denied December 1, 1980.

.

---

*Assigned by the Chairperson of the Judicial Council.