[No. A059546. First Dist., Div. Five. Nov. 12, 1993.]

THE PEOPLE, Plaintiff and Respondent, v.
DARRELL JAMES TATMAN, Defendant and Appellant.

## COUNSEL

James B. Laflin, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Stan M. Helfman and Violet M. Lee, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**HANING, J.**—Darrell James Tatman appeals his conviction by jury trial of conspiracy to violate Fish and Game Code statutes governing the harvesting of abalone. (Pen. Code, § 182, subd. (a)(1); Fish & G. Code, §§ 2000, 2002, 8301, 8305, subd. (a).)[1] Appellant contends he could not be convicted of felony conspiracy for violation of specific misdemeanor statutes. He also asserts instructional error. We affirm.

### FACTS

Appellant is a commercial urchin and abalone fisherman in Mendocino County. As of December 19, 1989, he had been under surveillance by Lieutenant Marvin Hee of the Fish and Game Department because he had been seen poaching abalone off the Sonoma and Marin County coasts. Hee was familiar with appellant's daily routine of meeting his crew for breakfast at a specific restaurant before setting out in his boat, "Hell Raisers." On December 19 appellant broke his routine. Instead of going directly from the restaurant to his boat, he went first to a marine supply store, emerging with

---

[1]Unless otherwise indicated, all further statutory references are to the Fish and Game Code.

burlap sacks, which are not used in urchin harvesting. Instead of a crew of three or four, he departed with only one person, Scott Brady.

Appellant anchored at a cove north of Fort Bragg. Hee observed the activities of Brady and appellant from a cliff above the cove using a 60-power spotting scope. He saw Brady enter the water using diving gear. Brady circled underwater, then returned to the boat, where he conversed with appellant. He then returned to the water with an urchin haul bag and waited on the surface while appellant went into the cabin and returned with an object Hee could not identify. Appellant handed the object to Brady surreptitiously. After 20 minutes underwater Brady surfaced with the haul bag. Appellant handed Brady another haul bag, and the process was repeated two more times. Two of the bags contained approximately 80 red abalone each and the third bag contained 60 red abalone. Fish and Game regulations forbid the taking of abalone with the use of breathing apparatus north of the Golden Gate Bridge. The abalone season in the Fort Bragg area ends in November. During the season divers are limited to a total of four abalone.

Brady made two more dives in a different area with an urchin rake and another bag, returning both times with a partially filled bag of urchins. He and appellant placed the bags of abalone near the engine compartment and covered them with empty urchin bags and burlap sacks, hiding them completely from view. They then headed out to sea. Hee returned to Fort Bragg to await their return. His partner, Steven Morse, continued surveillance of the boat. Morse saw Brady piloting the boat and appellant in the stern apparently cleaning abalone, because he was bent over and shells were thrown over the side into the water. Three or four miles off shore, the boat stopped for an hour, and appellant and Brady jettisoned unidentifiable objects from the stern. The boat then headed back to Noyo Harbor.

The officers saw appellant and Brady put the boat on a trailer at the Noyo Harbor boat launch. As they were pulling the boat up the ramp, the officers stopped them, boarded the boat and asked to see the catch. Fish and Game regulations require fishermen to display their catch on demand of a game warden. Appellant replied there was no catch other than the urchins in Hee's plain view. Inspecting the boat, Hee smelled abalone and found some abalone gut in the washout port. Appellant explained he and Brady had picked an abalone and eaten it. In response to Hee's inquiry, appellant said they had cooked it, but Brady said they had eaten it raw. The boat's stove was old and rusty, with nothing to indicate it had been used that day. In their continuing search, Hee and Morse smelled glue in the cabin. Morse pulled up the carpeting, still wet with glue. Underneath was a hidden compartment containing 21 bags of abalone meat—taken from approximately 196 abalone.

Brady's testimony for the prosecution was largely consistent with that of the officers. He stated that after surfacing from his first dive he told appellant he could see an abundance of urchins and abalone on the sea floor. Appellant instructed him to pick the abalone and handed him an abalone iron. Brady knew it was illegal to dive commercially for abalone north of the Golden Gate Bridge, and told appellant that he (appellant) would have to "take the heat" if they were caught. There was no discussion of money, but Brady expected to receive some proceeds from the illegal catch. Brady denied conspiring with appellant, but acknowledged that he and appellant agreed to break the law.

In addition to conspiracy appellant was charged with various misdemeanor violations of the Fish and Game Code involving the illegal taking of abalone. At the conclusion of respondent's case-in-chief, appellant moved for a judgment of acquittal of conspiracy. When it was denied, he pled guilty to the misdemeanor counts.

The jury found appellant guilty of felony conspiracy to commit the crimes of (1) unlawful taking of red abalone in a prohibited area (§ 8305, subd. (a)), (2) unlawful possession of red abalone (§ 2002), (3) bringing abalone ashore not attached to a shell (§ 8301), and (4) taking and possessing abalone where urchins are taken. (Cal. Code Regs., tit. 14, § 120.7, subd. (j)(1).) Of the several overt acts alleged as furthering the conspiracy, the jury found true that (1) on December 19, 1989, appellant and Brady were found with abalone in a hidden compartment aboard the fishing vessel "Hell Raisers" and (2) they transported approximately 196 abalone into Noyo Harbor.

Appellant was sentenced to the upper term of three years in prison and assessed a fine of $18,500.

## DISCUSSION

### I

Appellant contends the general conspiracy statute in the Penal Code cannot be used to elevate misdemeanor offenses in the Fish and Game Code to a felony.

A violation of any provision of the Fish and Game Code or any regulation adopted pursuant thereto is a misdemeanor. (§ 12000.) A conspiracy to commit a misdemeanor may be punished as a felony (Pen. Code, § 182, subd. (a)), and if the illegal object of a conspiracy is accomplished, a defendant may be separately liable for both the conspiracy and the substantive offense. (*Williams* v. *Superior Court* (1973) 30 Cal.App.3d 8, 10 [106

Cal.Rptr. 89].) A conspiracy to commit a misdemeanor does not elevate the misdemeanor to a felony. It is the unlawful agreement to commit a criminal offense that constitutes a felony. ■ The theory behind these principles is that collaborative criminal activities pose a greater potential threat to the public than individual acts. "Criminal liability for conspiracy, separate from and in addition to that imposed for the substantive offense which the conspirators agree to commit, has been justified by a 'group danger' rationale. The division of labor inherent in group association is seen to encourage the selection of more elaborate and ambitious goals and to increase the likelihood that the scheme will be successful. Moreover, the moral support of the group is seen as strengthening the perseverance of each member of the conspiracy, thereby acting to discourage any reevaluation of the decision to commit the offense which a single offender might undertake. And even if a single conspirator reconsiders and contemplates stopping the wheels which have been set in motion to attain the object of the conspiracy, a return to the status quo will be much more difficult since it will entail persuasion of the other conspirators. [Citations.]" (*People* v. *Zamora* (1976) 18 Cal.3d 538, 555-556 [134 Cal.Rptr. 784, 557 P.2d 75]; see also *Callanan* v. *United States* (1961) 364 U.S. 587 [5 L.Ed.2d 312, 81 S.Ct. 321].)

■ Appellant also argues that *People* v. *Mayers* (1980) 110 Cal.App.3d 809 [168 Cal.Rptr. 252] precludes a conspiracy charge for violations of the Fish and Game Code. In *Mayers*, the victim lost $80 in a three-card monte scam, and the defendant was convicted of the misdemeanor of operating a three-card monte game (Pen. Code, § 332) and conspiracy to cheat and defraud another in a three-card monte game. (Pen. Code, § 182, subd. (a)(4).) Penal Code section 332 provides, in pertinent part, that every person who by the game of three-card monte fraudulently obtains from another person money or property shall be punished as in a case of larceny of property of like value. According to the prosecution's expert witness, a three-card monte game could not be perpetrated without the collaboration of the card dealer and a shill.

Reiterating the well-established rules that specific conduct prohibited by a special statute cannot be prosecuted under a general statute, and that where a general statute standing alone would include the same matter as the special act, and thus conflict with it, the special act will be considered an exception to the general statute, *Mayers* reversed and ordered the conspiracy charge dismissed. "[Penal Code s]ection 332 makes Mayers' offense a misdemeanor [because the defrauded amount was equivalent to a petty theft]. By simple logic, if [Penal Code] section 182 is applicable under these narrow facts, any [Penal Code] section 332 misdemeanor violation would be automatically elevated to a felony by applying the general law of [Penal Code] section 182,

subdivision [(a)(4)]." (*People* v. *Mayers, supra*, 110 Cal.App.3d at p. 814.) Given the requirement that two people are needed to perpetrate a game of three-card monte, punishment "as a conspiracy would void [Penal Code] section 332's specifically sanctioned misdemeanor punishment of three-card monte where the value of [the] defrauded property did not exceed [$400]." (*Id.* at p. 815, fn. omitted; see also *Williams* v. *Superior Court, supra*, 30 Cal.App.3d at p. 15 [prostitute convicted of misdemeanor prostitution cannot also be guilty of feloniously conspiring with her pimp to commit prostitution].)

*Mayers* concluded that dismissal was also mandated by the "Wharton's Rule"[2] doctrine that where "the cooperation of two or more persons is necessary to the commission of the substantive crime, and there is no ingredient of an alleged conspiracy that is not present in the substantive crime, then the persons necessarily involved cannot be charged with conspiracy to commit the substantive offense and also with the substantive crime itself. [Citations.] . . . The rule is considered in modern legal thinking as an aid in construction of statutes, a presumption that the Legislature intended the general conspiracy section be merged with the more specific substantive offense. [Citation.] Thus Wharton's Rule further substantiates our earlier conclusion that the specific conduct prohibited, made a misdemeanor by a special statute, cannot be prosecuted under a general statute punishing the identical conduct as a felony. [Citation.]" (*People* v. *Mayers, supra*, 110 Cal.App.3d at p. 815.)

The rationale of *Mayers* and *Williams* is inapplicable to the instant case. Although two persons can act in concert to poach large quantities of abalone, so can one person acting alone. Neither the language of the applicable Fish and Game statutes nor the record reveals that the cooperation of two persons is necessary to violate the substantive offenses of which appellant was convicted.

## II

▇ Appellant next contends there is insufficient evidence to support his conviction because the two overt acts found true by the jury—he and Brady were found with abalone in a hidden compartment aboard the boat, and he and Brady transported 196 abalone by boat into the harbor—occurred after the offenses which were the objective of the conspiracy were completed.[3]

▇ A conspiracy consists of two or more persons intending and agreeing to commit a crime, and an overt act by a member of the conspiracy in

---

[2]1 Anderson, Wharton's Criminal Law and Procedure (1957) page 191.

[3]The caption to appellant's argument states that the trial court erroneously denied his motion for acquittal (Pen. Code, § 1118.1) because the overt acts found true by the jury were

furtherance thereof. (Pen. Code, §§ 182, 184; *People* v. *Cockrell* (1965) 63 Cal.2d 659, 667 [47 Cal.Rptr. 788, 408 P.2d 116].) One cannot be convicted of conspiracy unless at least one overt act is alleged and proved. (Pen. Code, § 182, subd. (b).) Acts committed by the conspirators subsequent to the completion of the crime which is the primary object of the conspiracy are not overt acts in furtherance of the conspiracy. (*People* v. *Zamora, supra,* 18 Cal.3d at p. 560.)

■ Appellant was charged with conspiring to take abalone from a closed area, to take abalone unlawfully, to possess abalone unlawfully, to bring abalone ashore unattached to their shells, and to take and possess abalone where urchins are taken. Appellant argues that he completed all these offenses before he and Brady were found by the officers with abalone in the boat's hidden compartment and before they transported 196 abalone into Noyo Harbor.

We disagree. The primary objective of the conspiracy was to bring an impermissible quantity of abalone ashore for commercial profit. The objective would not be achieved until appellant and Brady realized a profit from their illegally harvested abalone. There is substantial evidence by which the jury could find that secreting the abalone and transporting them into the harbor were done in furtherance of the agreement between appellant and Brady to take the abalone for commercial purposes; to possess it unlawfully, i.e., to possess more than the statutorily permitted amount; and to violate the requirement that abalone be brought ashore attached to the shell.

■ In a related argument appellant contends the court erred in refusing to give his requested pinpoint instruction that "[a]n overt act must precede the crime." ■ The trial court is required to instruct the jury on the points of law applicable to the case. (Pen. Code, § 1093, subd. (f).) No particular form is required as long as the instructions are complete and correctly state the law. (*People* v. *Anderson* (1966) 64 Cal.2d 633, 641 [51 Cal.Rptr. 238, 414 P.2d 366].) Jury instructions must be read together and understood in context as presented to the jury. Whether a jury has been correctly instructed depends upon the entire charge of the court. (*People* v. *Burgener* (1986) 41 Cal.3d 505, 538 [224 Cal.Rptr. 112, 714 P.2d 1251]; *People* v. *Rhodes* (1971) 21 Cal.App.3d 10, 20 [98 Cal.Rptr. 249].) An erroneous instruction requires reversal only when it appears that the error was likely to have misled the jury. (Cal. Const., art. VI, § 13; *People* v. *Mayberry* (1975) 15

postcrime acts that occurred after the objective of the conspiracy were accomplished. Insofar as the motion was made before any jury deliberation, any error in the court's ruling on the motion is unrelated to the jury's eventual findings. The body of appellant's argument demonstrates that he is not actually challenging the denial of his motion to acquit.

Cal.3d 143, 159 [125 Cal.Rptr. 745, 542 P.2d 1337]; *People* v. *Gordon* (1973) 10 Cal.3d 460, 470 [110 Cal.Rptr. 906, 516 P.2d 298].)

██ Pertinent to the overt act requirement of conspiracy the jury was instructed "there must be proof of the commission of at least one of the overt acts alleged in the information. . . . [¶] The term 'overt act' means any step taken or act committed by one or more of the conspirators which goes beyond mere planning or agreement to commit a public offense, and which step or act is done in furtherance of the accomplishment of the object of the conspiracy. [¶] To be an overt act the step taken or act committed need not in and of itself constitute the crime or even an attempt to commit the crime which is the ultimate object of the conspiracy nor is it required that such step or act in and of itself be a criminal or an unlawful act. . . . [¶] . . . [¶] Evidence of the commission of an act which furthered the purpose of an alleged conspiracy is not, in itself, sufficient to prove that the person committing the acts was a member of such a conspiracy." "[I]n order to find defendant guilty of the crime of conspiracy, you must find that one or more overt acts were committed in furtherance of the conspiracy, and you must unanimously agree as to which particular overt act or acts were committed. . . ."

These instructions sufficiently apprised the jury that the overt act must precede the completion of the crime that is the objective of the conspiracy. Jurors are presumed to be intelligent persons capable of understanding and correlating jury instructions. (*People* v. *Yoder* (1979) 100 Cal.App.3d 333, 338 [161 Cal.Rptr. 35].) The natural and logical understanding of the frequent use of the phrase "in furtherance," or variations thereof, was that the overt act occur prior to the ultimate offense. Furthermore, any remote doubt was dispelled during closing argument, when both the prosecutor and defense counsel emphasized that the overt act must come before the objective of the conspiracy was completed.[4]

III

██ Appellant also challenges the court's failure to give any accomplice instructions, particularly those governing the requirement that accomplice

---

[4]The prosecutor stated: "Now, [the overt act] has to be in furtherance of the conspiracy . . . . [I]f you find that overt act was not done until after the conspiracy was over or had been completed, then it can't be an overt act. Okay. I want to make that very clear. [¶] If the conspiracy had been completed and was over with and there's something in that list of overt acts, it's not an overt act. An overt act has to be in furtherance of the conspiracy and in the course of the conspiracy, [preceding] or in the course of. . . ."

Defense counsel stated: "The crime, again, is taking the abalone. Jumping in the water, diving down and getting those abalone is the crime committed. It's my position that once that has occurred any act after that is a subsequent act and cannot be considered an overt act in furtherance of this conspiracy. . . ." He then reviewed each alleged overt act and argued why it was committed after the crime.

testimony be corroborated and that it be viewed with distrust (CALJIC Nos. 3.11, 3.18).

At the time of trial Scott Brady had, pursuant to a plea bargain, pled guilty to and been sentenced for the same misdemeanors as those charged against appellant. The charge of conspiracy against him was dropped as part of the plea bargain. Although it is unclear from the record who made it, there was originally a request for accomplice instructions. However, they were "withdrawn in light of [appellant's] plea to the misdemeanor counts. . . ." The record does not indicate that appellant objected to their being withdrawn.

■ A court is obligated to instruct sua sponte concerning accomplice testimony whenever there is testimony sufficient to warrant the jury concluding that a witness implicating a defendant was an accomplice. (*People* v. *Gordon, supra,* 10 Cal.3d at p. 466.) An accomplice is one who "is liable to prosecution for the identical offense charged against the defendant on trial in the cause in which the testimony of the accomplice is given." (Pen. Code, § 1111.) A conviction cannot stand upon the testimony of an accomplice unless it is corroborated with other evidence tending to connect the defendant with the commission of the offense. (Pen. Code, § 1111.) ■ Brady was obviously an accomplice to the conspiracy—he was the person with whom appellant was charged with conspiring. Consequently, the court erred in failing to give accomplice instructions sua sponte.

■ The failure to instruct on accomplice testimony is harmless if there is sufficient corroborating evidence in the record. (*People* v. *Miranda* (1987) 44 Cal.3d 57, 100 [241 Cal.Rptr. 594, 744 P.2d 1127].) Such corroborating evidence need not corroborate every fact to which the accomplice testified, but is sufficient if it tends to connect the defendant with the crime in such a way as to satisfy the jury that the accomplice is truthful. It may be slight and entitled to little consideration standing alone. (*People* v. *Fauber* (1992) 2 Cal.4th 792, 834-835 [9 Cal.Rptr.2d 24, 831 P.2d 249].) ■ Brady's testimony is adequately corroborated by the testimony of the game wardens, who saw him diving, saw him and appellant haul three bags of abalone onto appellant's boat, cover them with bags, stop the boat out at sea and remove the meat from the shells, conceal the shells by discarding them at sea, hide the meat in a secret compartment, and unlawfully transport it ashore.

IV

■ Finally, appellant contends the court erred in failing to define "commercial purposes" when instructing the jury that appellant was charged with

conspiracy to violate section 8305, which states that "[i]t is unlawful to take abalone for commercial purposes . . . ."

The court has a sua sponte duty to give explanatory instructions when the terms in an instruction have a technical meaning peculiar to the law, but not if they are commonly understood by those familiar with the English language and of ordinary intelligence. (See *People* v. *Anderson, supra,* 64 Cal.2d at p. 639; *People* v. *Ordonez* (1991) 226 Cal.App.3d 1207, 1229-1230 [277 Cal.Rptr. 382].) There is nothing unique about the phrase "commercial purposes" in section 8305. Rather, it is a phrase generally associated with a profitmaking enterprise, so that it would be readily understood to mean taking abalone to make money, as opposed to taking for personal consumption. The prosecutor reinforced the common understanding of the phrase when he argued in closing that the evidence showed that the objective of appellant's conspiracy was "to profit illegally from abalone taken from the north coast . . . possessing those abalone . . . long enough to get them to the commercial buyer . . . . [S]o the buyer doesn't have to worry about the shell . . . taking them to shore not in their shell . . . . [¶] [W]hat they intended to do was take abalone . . . get out of the harbor . . . get to a buyer, sell the abalone and split the profits accordingly . . . ."

### DISPOSITION

The judgment is affirmed.

Peterson, P. J., and King, J., concurred.

Appellant's petition for review by the Supreme Court was denied February 23, 1994.