Filed 1/12/22  In re Melody M. CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re MELODY M., a Person Coming Under the Juvenile Court Law. | B312460 <br><br> (Los Angeles County Super. Ct. No. FJ57515) |
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> MELODY M., <br><br> Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, William A. Crowfoot, Judge.  Affirmed.

Richard L. Fitzer, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior

Assistant Attorney General, Zee Rodriguez, Supervising Deputy Attorney General, and Charles S. Lee, Deputy Attorney General, for Plaintiff and Respondent.

_____

## INTRODUCTION

Melody M. appeals from the juvenile court's jurisdiction findings and disposition order adjudging her a ward of the court under Welfare and Institutions Code section 602[1] and placing her on probation. Melody challenges a warrantless search condition the court imposed as a term of her probation. Because that condition had a relationship to Melody's offense of making a criminal threat against her sister and was reasonably related to future criminality, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Melody Threatens Her Sister*

In April 2021 16-year-old Melody and her older sister, Marlene, were living with their grandmother, whom they called "mom." Also living in the house with Melody and Marlene were their two cousins, ages one and five.

On April 14, 2021, after the grandmother told Marlene to ask Melody "if she was going to come back home," Marlene sent Melody a text message: "Mom said weren't you gonna come

_____

[1] Undesignated statutory references are to the Welfare and Institutions Code.

2

back." According to Marlene, Melody was "out in the streets" and "hadn't been home" in some time. Three days later Melody responded by text message: "Tell that bitch I said leave me the fuck alone before I pull up to the pad with the homies and really scare the fuck out of all of you with a strap." Marlene understood this to mean that Melody was threatening to "come to the house with a gun" and scare her. Melody's message continued: "IDGAF [I don't give a fuck] if we have kids in the house. Tell her leave me the fuck alone and stop calling me."

Marlene and Melody continued this text message exchange, trading profanity-laced insults, commands to "shut the fuck up," and assurances that each was unloved by their parents. Melody concluded the exchange with "And I know damn well I put fear in your heart, bitch. I've always fucked you up,[2] and the worst shit I could do to you. Just watch when I see you, stupid bitch. I'll stab your fat ass. Go talk to your dead homegirl's grave.[3] I'll spit on her shit." Marlene believed Melody was capable of carrying out the threat of stabbing her because Melody was a "wannabe gang member[ ]." In addition, about a year before, Marlene had seen Melody threaten their aunt with a knife when telling the aunt not to touch Melody's food.

On the night of April 21, 2021 Melody appeared at the grandmother's house, knocking loudly on the door, crying, and calling out: "Where's Marlene? Where the fuck is Marlene? Where is she?" Marlene and other family members fled from the house to the backyard, while Marlene's aunt called the police.

---

2      Here Melody inserted "a laughing emoji."

3      This referred to a friend of Marlene's who had died.

Los Angeles County Sheriff's Deputy David Vaca responded to the call, along with other deputies. Deputy Vaca found Melody pacing back and forth on the front porch of the house, repeatedly screaming that she had "to get out of there" and that she was "going to hurt somebody." An older (unidentified) woman was on the porch with her, trying to prevent Melody from entering the house.

After Marlene and her family members had been in back of the house for half an hour, the sheriff's deputies called Marlene to the front of the house. Melody was now sitting on the porch in handcuffs, and when she saw Marlene, Melody tried to charge her, saying, "I'm going to fuck her up." The deputies prevented Melody from making contact with Marlene. Because Melody was speaking rapidly, pacing, acting erratically, and sweating on a cool night, Deputy Vaca believed she was "under the influence." When the deputies asked her about this, Melody told them she "had smoked marijuana" and "taken an unknown pill."

> B. *The Juvenile Court Sustains a Petition Under Section 602, Declares Melody a Ward of the Court, and Places Her on Probation*

The People filed a petition in the juvenile court alleging Melody came within the jurisdiction of the court under section 602 as a result of making a criminal threat against Marlene, in violation of Penal Code section 422, subdivision (a).[4] The court,

---

[4] The elements for proving a criminal threat under Penal Code section 422 are "'(1) that the defendant "willfully threaten[ed] to commit a crime which will result in death or great bodily injury to another person," (2) that the defendant made the threat "with the specific intent that the statement . . . is to be

4

after finding Melody committed the alleged offense, sustained the petition.  The court declared Melody a ward of the court, removed her from her parents, and committed her to the care, custody, and control of the Los Angeles County Probation Department for suitable placement.  The court set the maximum period of physical confinement at one year and gave Melody 24 days of predisposition credit.

The court also imposed various conditions on Melody's probation, including that Melody "must not have, possess or act like [she] possess[es] an object [she knows] is a dangerous or deadly weapon," "must not . . . knowingly use or possess illegal drugs or mind altering substances except as prescribed by a physician," and "must permit a law enforcement officer to search [her] person, house or property at any time of the day or night with or without a warrant."  Counsel for Melody objected to the search condition on the ground it was not "related to the instant offense."  The court (impliedly) overruled the objection, stating, "The instant offense involved a threat to come to the house with a

---

taken as a threat, even if there is no intent of actually carrying it out," (3) that the threat—which may be "made verbally, in writing, or by means of an electronic communication device"—was "on its face and under the circumstances in which it [was] made, . . . so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat," (4) that the threat actually caused the person threatened "to be in sustained fear for his or her own safety or for his or her immediate family's safety," and (5) that the threatened person's fear was "reasonabl[e]" under the circumstances.'" (*In re George T.* (2004) 33 Cal.4th 620, 630; accord, *In re A.G.* (2020) 58 Cal.App.5th 647, 653-654.)

gun or a knife and cause great bodily injury.  So it would seem to me that making sure it was nothing but an empty threat continues to be the case.  So I think it is directly related whether or not you actually have a gun or a knife."  Melody timely appealed.

## DISCUSSION

A.  *Applicable Law and Standard of Review*

"'The purposes of juvenile wardship proceedings are twofold: to treat and rehabilitate the delinquent minor, and to protect the public from criminal conduct.' [Citation.]  To those ends, a juvenile court may order a ward under its jurisdiction to probation.  [Citations.]  Under Welfare and Institutions Code section 730, subdivision (b), the court 'may impose and require any and all reasonable conditions that it may determine fitting and proper to the end that justice may be done and the reformation and rehabilitation of the ward enhanced.'  'The juvenile court has wide discretion to select appropriate conditions,' but '[a] probation condition that imposes limitations on a person's constitutional rights must closely tailor those limitations to the purpose of the condition to avoid being invalidated as unconstitutionally overbroad.' [Citations.]  'A condition of probation which is impermissible for an adult criminal defendant is not necessarily unreasonable for a juvenile receiving guidance and supervision from the juvenile court.' [Citation.]  On appeal, we "'review conditions of probation for abuse of discretion.'" [Citation.]  Specifically, we review a probation condition 'for an indication that the condition is "arbitrary or capricious" or otherwise exceeds the bounds of

6

reason under the circumstances.'" (*In re Ricardo P.* (2019) 7 Cal.5th 1113, 1118.)

B. *The Juvenile Court Did Not Abuse Its Discretion in Imposing the Search Condition*

Melody contends the juvenile court abused its discretion in imposing the probation condition requiring her to submit to warrantless searches because that condition does not pass the test set forth in *People v. Lent* (1975) 15 Cal.3d 481 (*Lent*). The condition did, and the court did not.

In *Lent, supra,* 15 Cal.3d 481 the Supreme Court "held that 'a condition of probation which requires or forbids conduct which is not itself criminal is valid if that conduct is reasonably related to the crime of which the defendant was convicted or to future criminality.' [Citation.] [*Lent*] adopted the following three-part test . . . : 'A condition of probation will not be held invalid unless it "(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality."' [Citations.] The *Lent* test 'is conjunctive—all three prongs must be satisfied before a reviewing court will invalidate a probation term.'" (*In re Ricardo P., supra,* 7 Cal.5th at p. 1118; see *id.* at p. 1119 ["the *Lent* test governs in juvenile and adult probation cases alike"]; *Lent*, at p. 486.)

Regarding prong one of the *Lent* test, the search condition here has a direct relationship to Melody's criminal threat against Marlene. Melody told Marlene she was going to stab her and threatened to bring a gun to the house to scare her. As the juvenile court suggested, requiring Melody to submit to a search

of her person, house, and property at any time, with or without a warrant, helps ensure she does not have access to a knife or gun. Melody's argument she "did not use a weapon to commit this crime" misses the point. "The first prong of *Lent* asks whether the probation condition has *no* relationship to the conviction. [Citation.] This broad language does not require a specific connection to the *instrumentalities* of the convicted offense." (*People v. Patton* (2019) 41 Cal.App.5th 934, 945; see *People v. Appleton* (2016) 245 Cal.App.4th 717, 724 [even a "somewhat attenuated" nexus between the offense and the probation condition is sufficient "under the deferential standard of review required in the *Lent* analysis"].)

Melody's allusion to a knife and reference to a gun when making her threats against Marlene provide a nexus between the search condition and the offense in this case that is missing in the cases she cites. In *People v. Keller* (1978) 76 Cal.App.3d 827, disapproved on another ground in *People v. Welch* (1993) 5 Cal.4th 228, 237, for example, the court held a warrantless search condition, imposed as a term of probation after the defendant pleaded guilty to petty theft of a ballpoint pen and based on an assumption the theft related to the defendant's "drug involvement," was unreasonable because there was no evidence of "any drug relationship to the theft of a ballpoint pen." (*Id.* at pp. 830, 838-839; see also *People v. Mayers* (1980) 110 Cal.App.3d 809, 816-817 [search condition was not reasonably related to the defendant's "offense of being a shill in a game of three-card monte,"[5] which is "not a crime of possession"]; *In re Martinez*

---

[5] "[T]hree-card monte originated in the 1800's as a variation of the 'pea in the thimble' game.[*] The game uses a combination of two black cards and one red, or the reverse. The cards are bent

(1978) 86 Cal.App.3d 577, 582 [warrantless search condition satisfied first prong of *Lent* test where neither the present offense of assault by means of force likely to produce great bodily injury nor the defendant's history suggested any involvement with concealed weapons].)

Regarding prong three of the *Lent* test, the search condition here is reasonably related to future criminality because it allows probation officers to supervise Melody close enough to help ensure she does not make good on the violent threats she made against Marlene. "[P]robation conditions authorizing searches 'aid in deterring further offenses . . . and in monitoring compliance with the terms of probation. [Citations.] By allowing close supervision of probationers, probation search conditions serve to promote rehabilitation and reduce recidivism while helping to protect the community from potential harm by

---

into tent fashion for easy handling, and each card is manipulated with a different finger by the dealer in order to give a false appearance as to where the winning (odd) card has been placed after the shuffle. In addition to the dealer, there are minimally two other participants in the game, a shill associated with the dealer and a mark or chump. . . . [T]he card scheme cannot be perpetrated without the collaboration of the dealer and shill. [¶] A shill's function includes verbally encouraging onlookers to participate, placing enticing bets, as well as distracting the crowd from the dealer's sleight of hand." (*People v. Mayers* (1980) 110 Cal.App.3d 809, 811-812.)

      * Pea in the thimble, or thimblerig, "is a game 'played with three small cups shaped like thimbles and a small ball or pea that is so quickly shifted from under one cup to under another that the person watching is often misled.' [Citation.] Often the game functions 'as a swindling operation.'" (*Cole v. C.I.R.* (7th Cir. 2011) 637 F.3d 767, 777, fn. 2.)

probationers.'" (*People v. Olguin* (2008) 45 Cal.4th 375, 380.) A "probation condition that enables probation officers 'to supervise [their] charges effectively is . . . "reasonably related to future criminality."'" (*In re P.O.* (2016) 246 Cal.App.4th 288, 295; accord, *Olguin*, at pp. 380-381; see *In re P.O.*, at p. 295 ["This is true 'even if [the] condition . . . has no relationship to the crime of which a defendant was convicted.'"].)

In support of her argument on prong three, Melody cites *In re Ricardo P.*, *supra*, 7 Cal.5th 1113, but that case does not help her. There the Supreme Court held that a probation condition requiring the defendant to submit to warrantless searches of his electronic devices satisfied the third prong of the *Lent* test because, on the record in that case, the burden the condition imposed "on [the defendant's] privacy is substantially disproportionate to the countervailing interests of furthering his rehabilitation and protecting society." (*In re Ricardo P.*, at p. 1119.) The Supreme Court emphasized the special privacy concerns raised by searches of electronic devices. (See *id.* at pp. 1122-1127.) Because the search condition at issue here did not include Melody's electronic devices,[6] the Supreme Court's holding in *In re Ricardo P.* does not apply. (See *id.* at p. 1127 ["[o]ur determination that the electronics search condition here is not reasonably related to [the defendant's] future criminality will not impair juvenile courts' ability to impose traditional search conditions," such as "those permitting warrantless searches of a

---

[6] The People take the position that the search condition here does not extend to Melody's electronic devices, and Melody does not suggest otherwise.

juvenile probationer's person, property, and residence," when warranted].)

## DISPOSITION

The juvenile court's jurisdiction findings and disposition orders are affirmed.

SEGAL, Acting P. J.

We concur:

FEUER, J.

WISE, J.*

---

* Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

11