Filed 1/3/22  P. v. Donley CA5

<u>**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>SHAWN ARLIN DONLEY,<br><br>Defendant and Appellant. | F081335<br><br>(Super. Ct. No. 16449F)<br><br>**OPINION** |

-ooOoo-

**THE COURT**<sup>*</sup>

APPEAL from a judgment of the Superior Court of Mariposa County.  Michael A. Fagalde, Judge.

Jan B. Norman, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and Robert C. Nash, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\*        Before Peña, Acting P. J., Smith, J. and Snauffer, J.

Defendant Shawn Arlin Donley pled no contest pursuant to a negotiated plea agreement to felony forgery. The forgery involved seven checks, each with a face value below $950, but with an aggregate face value of $4,376. On appeal, defendant contends that the sentence and plea for *felony* forgery must be vacated because it was legally impossible for him to have committed more than misdemeanor forgery since every check had a face value below $950. The People argue that we must dismiss defendant's appeal because he failed to obtain a certificate of probable cause on the question presented on appeal. The People further argue that even if we reach the merits of defendant's claim, it is without merit because the fraudulent checks attributable to defendant exceed a total value of $950. We dismiss defendant's appeal.

## PROCEDURAL SUMMARY

On October 28, 2019, the Mariposa County District Attorney filed a second amended complaint charging defendant and five codefendants with conspiracy to commit check forgery (Pen. Code, §§ 182, subd. (a)(1), 475, subd. (a);[1] count 1), felony forgery (§ 475, subd. (a); count 2), and misdemeanor forgery (§§ 470, subd. (d), 473, subd. (b); count 3). As to counts 1 and 2, the second amended complaint further alleged that defendant had suffered a prior felony "strike" conviction within the meaning of the "Three Strikes" law. (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d).)

On the same date, pursuant to a negotiated plea agreement, defendant pled no contest to count 2 and admitted the prior strike conviction in exchange for dismissal of counts 1 and 3. The plea agreement included an agreed sentence of two years eight months in prison and payment of restitution in the amount of $4,376.15.[2] The plea

---

[1]    All further statutory references are to the Penal Code.

[2]    The written plea agreement provided that restitution would be paid in the amount of $4,376.15; as stated on the record, the plea agreement provided that defendant would pay restitution in the amount of $4,376.55.

2.

agreement specified that defendant admitted the police reports contained a factual basis for the plea.

On May 6, 2020, the trial court imposed the agreed-upon sentence as follows: on count 2, two years eight months (the low term of 16 months doubled due to the prior strike conviction). The court also ordered defendant to pay restitution in the amount of $4,376.15, in addition to other fees and fines.

On June 16, 2020, defendant filed a notice of appeal. Defendant requested and obtained a certificate of probable cause on two issues: (1) an unspecified claim of ineffective assistance of counsel and (2) a claim that the trial court erred in failing to strike defendant's prior strike conviction.

## FACTUAL SUMMARY[3]

On September 10, 2019, a Mariposa County Sheriff's deputy responded to a market in Mariposa County. The market manager told the deputy that on September 5, 2019, Nicole Schoonover cashed a check at the market. The check was determined to be fraudulent.

On September 11, 2019, Schoonover returned to the market and attempted to cash another fraudulent check. A market employee notified the sheriff's department and attempted to stall the transaction long enough for a deputy to arrive. Schoonover left the market before a deputy arrived. However, the vehicle Schoonover departed in was described to one of the deputies who was able to locate the vehicle and conduct a traffic stop. Defendant was the driver of the vehicle and Schoonover was the passenger. The deputy questioned Schoonover about the checks. She denied knowing that the checks were fraudulent and told the deputy that she received the checks from defendant, for

---

[3] In the plea agreement, defendant agreed that the trial court could consider Mariposa County Sheriff's Department report No. MM1901166 to find a factual basis for his plea. The probation officer's report is based on that police report. Our summary of the facts is therefore drawn from the probation officer's report.

whom she worked. Defendant denied knowing anything about the checks. Defendant and Schoonover were then both taken into custody.

On the same date, the market's manager reviewed the checks received by the market within the previous two weeks and discovered that similar fraudulent checks had been cashed by Schoonover, defendant, Melanie Donley, Matthew Donley, Roy Sapp, and Christopher Robesky. Defendant personally cashed checks in the amount of $547.35 and $635.27. None of the checks individually exceeded $950 in face value, but the total value of the fraudulent checks cashed was $4,376.

On September 12, 2019, a sheriff's deputy conducted a follow-up interview with defendant and Schoonover. Schoonover told the deputy that defendant made the checks at his mother's house and distributed them between himself and the others involved in the scheme. She said that when she cashed the checks, she gave the money to defendant who gave her a portion back. Defendant, on the other hand, told the deputy that he knew nothing about making fraudulent checks or who may be involved in the scheme. When asked who gave Schoonover the checks, defendant told the deputy that he assumed that Robesky or Matthew Donley may have been involved in the scheme.

On the same date, deputies executed a search warrant at defendant's residence. They seized a computer, printer, and check paper.

Deputies also obtained surveillance video footage from the cashing of the fraudulent checks. A vehicle depicted in at least one of the videos was registered to defendant's home address.

## DISCUSSION

Pursuant to section 1237.5, "[n]o appeal shall be taken" from a judgment of conviction obtained by plea of guilty or no contest unless the defendant has filed a written statement of cognizable grounds for the appeal—grounds "going to the legality of the proceedings"—and the trial court has certified the existence of probable cause for the issues raised on appeal. The purpose of requiring a defendant to obtain a certificate of

probable cause is "to weed out frivolous and vexatious appeals from pleas of guilty or no contest, before clerical and judicial resources are wasted." (*People v. Buttram* (2003) 30 Cal.4th 773, 790.)

Defendants need not comply with the requirement that they obtain a certificate of probable cause if the appeal is based on: (1) the denial of a motion to suppress under section 1538.5, or (2) grounds that arose after the entry of the plea and do not affect the plea's validity. (Cal. Rules of Court, rule 8.304(b)(4).) Those exceptions are not applicable here. Defendant contends that his no contest plea to felony forgery must be vacated because his guilt on that count was legally impossible. His claim squarely implicates the validity of his no contest plea. Defendant's failure to obtain a certificate of probable cause for the question at bar is therefore fatal to his appeal.[4] His appeal must therefore be dismissed.

Defendant does not directly acknowledge his failure to obtain a certificate of probable cause on the question of the legal impossibility of his conviction. Instead, he directs our attention to *People v. Jerome* (1984) 160 Cal.App.3d 1087 and *People v. Soriano* (1992) 4 Cal.App.4th 781 (*Soriano*), both of which reached the merits of legal impossibility claims. In *Soriano*, the defendant complied with the requirement of section 1237.5[5] and the court reached the merits of his legal impossibility claim.

---

[4] It is clear that defendant knowingly and voluntarily entered his plea. He initially pled no contest, was permitted to withdraw his plea, then pled no contest a second time pursuant to a plea agreement that set out the agreed term of imprisonment. Defendant understood the consequences of his plea. (See *People v. Panizzon* (1996) 13 Cal.4th 68, 78–84.)

[5] "At the time Soriano filed his notice of appeal, Penal Code section 1237.5 required only that a defendant who would appeal from a judgment of conviction upon a plea of guilty or nolo contendere file with the trial court 'a written statement, executed under oath or penalty of perjury showing reasonable constitutional, jurisdictional, or other grounds going to the legality of the proceedings.'" (*Soriano*, *supra*, 4 Cal.App.4th at p. 784, fn. 1.)

(*Soriano*, at p. 784.)  Here, defendant failed to obtain a certificate of probable cause on the relevant question.  For purposes of section 1237.5 compliance, *Soriano* is of no assistance to defendant.

In *Jerome*, the defendant pled guilty to oral copulation of a person under 14 years of age, "but the victim was 15 years old."  (*People v. Jerome*, *supra*, 160 Cal.App.3d at p. 1092.)  The court recognized that the defendant failed to obtain a certificate of probable cause, but nevertheless addressed the merits of the defendant's claim by construing it as a petition for writ of habeas corpus.  (*Id*. at pp. 1094–1095.)  The court explained that "in rare cases, because of the jurisdictional challenge involved and the inherent and incurable defect in the prosecution, an appellate court may appropriately treat a barred appeal as a petition for writ of habeas corpus.  [Citation.]  'Where … the record shows without doubt that a defendant has pleaded guilty to a crime which he did not commit, the courts should hesitate to apply technical rules to prevent such defendant from obtaining relief.' "  (*Id*. at p. 1095.)  The court in *Jerome* explained that a refusal to address the claim on its merits would result in a miscarriage of justice.  (*Id*. at p. 1095, fn. 4.)  Such is not the case here.

Defendant was charged with felony conspiracy to commit forgery, felony forgery, and misdemeanor forgery.  Defendant elected to plead no contest to felony check forgery. Felony check forgery requires a defendant to forge a check that exceeds $950 in value. (§§ 473, subd. (b), 475.)  The value of multiple checks cannot be aggregated to meet the $950 threshold.  (*People v. Salmorin* (2016) 1 Cal.App.5th 738, 745–746; *People v. Hoffman* (2015) 241 Cal.App.4th 1304, 1308, 1310.)  However, our Supreme Court has repeatedly held that, absent affirmative legislative intent to the contrary, conspiracies to commit misdemeanors may be punished as felonies.  (*People v. Osslo* (1958) 50 Cal.2d 75, 97–98; *Sekt v. Justice's Court* (1945) 26 Cal.2d 297, 309; *Doble v. Superior Court* (1925) 197 Cal. 556, 565; see § 182, subd. (a); *People v. Mullins* (2018) 19 Cal.App.5th 594, 611 [conspiracy to commit a misdemeanor may be punished as a felony]; *People v.*

6.

*Tatman* (1993) 20 Cal.App.4th 1, 7 [same].)  No such legislative intent has been expressed in the context of conspiracy to commit forgery.  Felony conspiracy to commit check forgery therefore does not require a defendant to have forged a check that exceeds $950 in value.  It is committed when defendants conspire to commit misdemeanor forgery.

Here, all the forged checks had a face value less than $950.[6]  While it was legally impossible for defendant to have committed felony forgery, on the undisputed facts before us, defendant appears to have committed felony conspiracy to commit forgery.

Despite the legal impossibility of defendant having committed felony forgery, the People contend that defendant is estopped from obtaining the relief that he seeks.  For that position, the People rely on *People v. Miller* (2012) 202 Cal.App.4th 1450.  In *Miller*, the defendant pled guilty to felony possession of diazepam even though possession of diazepam was only punishable as an infraction or a misdemeanor.  (*Id*. at p. 1455 & fn. 4.)  Despite the error, the court concluded defendant was estopped from withdrawing from his plea or having his conviction modified for reasons of public policy. (*Id*. at p. 1456.)  It repeated the public policy discussion from *People v. Ellis* (1987) 195 Cal.App.3d 334—explaining the potential tension between the public policy need to prevent a defendant who agreed to a procedure in excess of the court's jurisdiction from " ' "trifl[ing] with the courts" ' "[7] and the " 'strong public policy … against allowing

---

[6]　The People suggest that we should also "consider the face value of the checks [defendant] forged" and "conclude the value of [defendant's] forgery exceeded $950." As noted, check forgery is not an offense that permits aggregation of the value of multiple checks to meet the felony amount threshold.  (*People v. Salmorin*, *supra*, 1 Cal.App.5th at p. 746.)  Creation of multiple fraudulent checks with face values below $950 constitutes multiple misdemeanors, not one felony.

[7]　The "trifle with the court" language used by the court in *Ellis* originally came from *City of Los Angeles v. Cole* (1946) 28 Cal.2d 509, overruled in part on other grounds in *County of Los Angeles v. Faus* (1957) 48 Cal.2d 672.  In *Cole*, the parties began but did not finish a jury trial.  (*Cole*, at pp. 511, 515.)  The parties then stipulated to a limited second trial.  (*Ibid*.)  After the second trial, the losing party appealed, arguing that the

defendants to plead guilty to crimes they did not commit.' " (*Miller*, at p. 1457.) Other relevant considerations were "[whether] an innocent person [wa]s convicted[;] … [whether the] legal mistake was of a magnitude of unfairness that vacating the plea agreement [is] the only equitable solution"; whether the defendant obtained the benefit of dismissal of other serious and apparently provable offenses that might have provided a tactical reason for the plea in excess of the court's jurisdiction; and whether the defendant's offenses involved serious and dangerous conduct. (*Id*. at pp. 1457–1458.)

This case is much the same as *Miller*. Here, permitting defendant to withdraw his plea would allow him to "trifle with the court." (*People v. Miller*, *supra*, 202 Cal.App.4th at p. 1457.) Defendant pled no contest to a felony offense of which he was not guilty in exchange for dismissal of a felony offense with the same potential punishment of which he was guilty. He obtained a substantial benefit from the plea; namely, he was sentenced to the lower term of two years eight months (16 months doubled due to the prior strike conviction) for conspiracy to commit fraud rather than the middle term of four years (two years doubled due to the prior strike conviction) or the upper term of six years (three years doubled due to the prior strike conviction). That benefit made his plea a reasonable tactical decision. Moreover, defendant's conduct was serious albeit nonviolent. He appears to have been responsible for forging checks with an aggregate face value of $4,376. This is not a case where vacating the plea would be the only equitable solution. Defendant is not an unsophisticated, innocent person who pled guilty although he committed no crime. Defendant committed a felony offense but pled no contest to a different felony offense he did not commit that had the same exposure. For that reason, we decline to construe his appeal as a petition for writ of habeas corpus.

---

court operated in excess of its jurisdiction by allowing the second trial. (*Ibid*.) In response, our Supreme Court explained that the losing party was estopped from making that argument; "[t]o hold otherwise would permit the parties to trifle with the courts." (*Ibid*.)

## **DISPOSITION**

Defendant's appeal is dismissed for failing to obtain a certificate of probable cause on the question presented.