Filed 9/9/22

CERTIFIED FOR PUBLICATION


COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, <br><br>     Plaintiff and Respondent, <br><br>     v. <br><br> ALAN BUENO, <br><br>     Defendant and Appellant. | D078700 <br><br><br><br> (Super. Ct. No. JCF002411) |

APPEAL from a judgment of the Superior Court of Imperial County, Marco D. Nuñez, Judge. Affirmed.

Bruce L. Kotler, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Steven T. Oetting, Acting Assistant Attorney General, Eric A. Swenson and Junichi P. Semitsu, Deputy Attorneys General, for Plaintiff and Respondent.

# INTRODUCTION

Defendant Alan Bueno, who was an inmate at the time of the offense at issue, arranged with a prison employee codefendant to obtain a cellular telephone. Bueno pleaded no contest to one felony count of conspiracy to violate Penal Code[1] section 4576, subdivision (a), which bars possession with the intent to deliver or the actual delivery of a cellular telephone to a prison inmate, after the trial court denied his motion to dismiss the conspiracy charge.[2]

On appeal, Bueno contends that he cannot be convicted of conspiracy to deliver a cellular telephone to an inmate because he is the inmate to whom the cellular telephone was delivered. Bueno analogizes the scenario in this case to cases involving drug sales, in which the "buyer-seller rule" precludes the purchaser from being held criminally liable for a conspiracy to sell drugs to himself. According to Bueno, this principle applies to preclude an inmate recipient of a cellular telephone from being held criminally liable for conspiring to commit the substantive offense of section 4576, subdivision (a). Alternatively, Bueno contends that the statutory scheme sets out a tiered system of punishment for the different roles that an individual might play in a scheme to deliver/have delivered a cellular telephone to an inmate, and that this scheme evinces a legislative intent that the inmate who participates in

---

[1] Additional statutory references are to the Penal Code unless otherwise indicated.

[2] Although the substantive offense set out in section 4576, subdivision (a) is a misdemeanor, the charge of *conspiracy* to commit a violation of section 4576, subdivision (a) is a felony offense.

such a scheme be punished by a loss of credits only, and not criminally prosecuted.

We conclude that Bueno's argument that he cannot be convicted of conspiracy to violate section 4576, subdivision (a) is without merit. We therefore affirm the judgment.

II.

FACTUAL AND PROCEDURAL BACKGROUND

A. *Factual background*[3]

In Bueno's signed change of plea form, he admitted that "CDC personnel will testify I am an inmate and I agreed to receive a cell phone from [co]defendant, Victor Manuel Morlett, a non-inmate." Bueno pleaded no contest to count 3 of the complaint, which charged him with conspiracy to commit the offense set out in section 4576, subdivision (a), and alleged two overt acts with regard to the conspiracy charge. Specifically, with respect to count 3, the complaint alleged that Bueno "instructed his wife, [S.], to send [codefendant] Morlett $600.00 as payment in exchange for . . . Morlett's delivery of a cellular telephone to [Bueno]," and that "[o]n February 8, 2018 at 7:23 p.m., . . . Morlett collected $600.00 sent by [S.] via an RIA Financial Walmart to Walmart transaction at 2150 N. Waterman Avenue, El Centro, Ca 92243."

In connection with the sentencing hearing, Bueno provided the trial court with a document titled "Circumstances in Mitigation," which stated that the facts "can be found in the investigating report made part of the record under Bueno's *People v. West* plea." According to the "Circumstances

---

[3] Bueno pleaded no contest to one of the charges against him and no trial was held. We therefore rely on the written record developed in support of Bueno's no contest plea as the factual basis for the conviction that Bueno challenges on appeal.

3

in Mitigation" document, Bueno claimed to have "played a minor role in the charged conspiracy." Bueno acknowledged that he had been assigned to work in the prison commissary where he was supervised by codefendant Morlett, a Centinela State Prison employee. Morlett had "access to cell phone vendors, cell phones, accounts, payment plans, [and] means of smuggling." Bueno contended that he "was under the coercive, extortionate influence of" Morlett during the time that he participated in the scheme to obtain a cellular telephone.

B.  *Procedural background*

The Imperial County District Attorney filed a complaint against Bueno and two codefendants, Victor Morlett and Michael Valencia. With regard to Bueno, the complaint charged one count of conspiracy to deliver a cellular telephone to an inmate or to possess a cellular telephone within a state prison with the intent to deliver to an inmate (§ 4576, subd. (a); count 3) and one count of giving or offering a bribe to ministerial officers, employees, or appointees (§ 67.5, subd. (a); count 6). As previously noted, with respect to count 3, the complaint alleged two overt acts: (1) that Bueno instructed his wife, S., to send Morlett $600 in exchange for Morlett's delivery of a cellular telephone to Bueno, and (2) that Morlett collected $600 from Bueno's wife. The complaint further alleged that Bueno had suffered one prior strike conviction (§§ 667, subd. (d), 1170.12, subd. (b)) and one prison prior (§ 667.5, subd. (b)).

Bueno filed a motion to dismiss, asserting that he could not be charged with conspiracy to deliver a cellular telephone to himself because the Legislature "set[ ] up a very specific sanction for *each actor* in this *anticipated* 'delivery' scenario." According to Bueno's motion to dismiss, pursuant to the statutory framework, the inmate may be punished for possession of a cellular

4

telephone by a maximum 90-day loss of credits and only the person who delivers the cellular telephone to the inmate is subject to prosecution. Bueno contended that the conspiracy statute cannot be used to "defeat this tiered system of punishment." Bueno further claimed that any charge or disciplinary action taken against him was barred by the one-year statute of limitations applicable to misdemeanors. The trial court held a hearing on Bueno's motion to dismiss and denied the motion.

Bueno pleaded no contest to count 3. The plea agreement provided that the bribery offense charged in count 6 and the enhancements would be dismissed and specified that Bueno would serve an eight-month term, to run consecutive to the sentence that he was currently serving.

Bueno sought and obtained a certificate of probable cause permitting him to challenge the denial of the motion to dismiss, and he filed a timely notice of appeal.

### III.

### DISCUSSION

Bueno contends that he cannot be convicted of *conspiracy* to commit section 4576, subdivision (a)[4]; according to Bueno, he cannot be criminally

---

[4] Section 4576, subdivision (a) provides:

> "Except as otherwise authorized by law, or when authorized by either the person in charge of the prison or other institution under the jurisdiction of the Department of Corrections and Rehabilitation or an officer of the institution empowered to give that authorization, a person who possesses with the intent to deliver, or delivers, to an inmate or ward in the custody of the department any cellular telephone or other wireless communication device or any component thereof, including, but not limited to, a subscriber identity module (SIM card) or memory storage device, is guilty of a misdemeanor, punishable by

5

liable for the offense of conspiring to deliver a cellular telephone to an inmate, as a matter of law, when he is the inmate to whom the cellular phone was delivered.

We begin by demonstrating that the elements required to establish a conspiracy were satisfied.[5] "A conspiracy is an agreement by two or more persons to commit any crime. [Citations.] A conviction for conspiracy requires proof of four elements: (1) an agreement between two or more people, (2) who have the specific intent to agree or conspire to commit an offense, (3) the specific intent to commit that offense, and (4) an overt act committed by one or more of the parties to the agreement for the purpose of carrying out the object of the conspiracy." (*People v. Vu* (2006) 143 Cal.App.4th 1009, 1024–1025.)

---

imprisonment in the county jail not exceeding six months, a fine not to exceed five thousand dollars ($5,000) for each device, or both that fine and imprisonment."

[5] The People contend that, to the extent Bueno is challenging the factual basis of his conviction, this court may consider the entire factual record to determine whether the facts support the conviction. Bueno does not dispute that this court may consider the entire factual record on appeal, but contends that he is nevertheless permitted to challenge the factual basis of the plea. Bueno asserts, however, that "[a]s a practical matter, the facts of the case have never been in dispute, either in the trial court or now on appeal," and agrees that the facts, as we have relayed them in part II, *ante*, are undisputed. We do not further address the parties' contentions in this respect, because it appears that Bueno concedes the basic facts underlying his conviction—i.e., that he entered into an agreement with Morlett for Morlett to obtain a cellular telephone to deliver to Bueno; Bueno instructed his wife to send Morlett $600 as payment for delivery of the cellular telephone; and Morlett collected the $600 from Bueno's wife. Bueno is arguing that these facts are, as a matter of law, insufficient to permit him to be convicted for conspiracy to commit a violation of subdivision (a) of section 4576.

6

Although the intended offense at issue in this case was a misdemeanor, it is clear that a *conspiracy* to commit a misdemeanor is an offense that may be punished as a felony. (*People v. Tatman* (1993) 20 Cal.App.4th 1, 7 (*Tatman*); see *Iannelli v. United States* (1975) 420 U.S. 770, 778 (*Iannelli*) [A "conspiracy can be punished more harshly than the accomplishment of its purpose"].) "A conspiracy to commit a misdemeanor does not elevate the misdemeanor to a felony[;]" rather, "[i]t is the unlawful agreement to commit a criminal offense that constitutes a felony." (*Tatman*, at p. 8.) Therefore, "it is generally proper to charge conspiracy even if in so doing the punishment invoked is more severe than that provided for the criminal conduct which is the objective of the conspiracy." (*People v. Pangelina* (1981) 117 Cal.App.3d 414, 419–420.) "The rationale for punishing conspiracy more severely than the offense that is the object of the conspiracy is that a conspiracy increases the likelihood that the criminal object successfully will be attained, and 'makes more likely the commission of crimes unrelated to the original purpose for which the combination was formed.' [Citations.] Collaboration in a criminal enterprise significantly magnifies the risks to society by increasing the amount of injury that may be inflicted." (*People v. Morante* (1999) 20 Cal.4th 403, 416, fn. 5, quoting *Callanan v. United States* (1961) 364 U.S. 587, 593–594; *Iannelli,* at p. 778 [affirming rationale that conspiracy "poses distinct dangers quite apart from those of the substantive offense"]; *Tatman,* at p. 8 [conspiracy to commit a misdemeanor may be punished as a felony in light of the "greater potential threat to the public" posed by "collaborative criminal activities"].)

As the People point out, Bueno does *not* contend that the undisputed facts of this case fail to establish the essential elements of a conspiracy; it is clear that the facts demonstrate that Bueno, through his no contest plea to

7

count 3 as well as the factual basis provided in the plea, admitted that all of the elements of a conspiracy were met.  (See *People v. Voit* (2011) 200 Cal.App.4th 1353, 1364 [" ' "The legal effect of [a no contest plea] to a crime punishable as a felony, shall be the same as that of a plea of guilty for all purposes." [Citation.]  A guilty plea "admits every element of the crime charged" [citation] and "is the 'legal equivalent' of a 'verdict' [citation] and is 'tantamount' to a 'finding' " ' "].)  Rather, Bueno's contention is that a separate legal rule or exception exists that demonstrates that, in enacting section 4576, the Legislature did not intend for an inmate to be convicted of the offense of conspiracy to commit a violation of subdivision (a) of section 4576 in the absence of evidence that the inmate and his coconspirator(s) planned to deliver the cellular telephone to an inmate *other than the conspiring inmate.*  (See *People v. Lee* (2006) 136 Cal.App.4th 522, 530 (*Lee*) [defendant "relies on narrowly drawn, interconnected exceptions to th[e] general rule [that defendant may be convicted of conspiracy to commit a given crime even if incapable of committing substantive crime itself], all of which are founded, however implicitly, on the notion that legislative intent is paramount in determining whether a party can be prosecuted for conspiracy in a given situation"].)

Although the contours of Bueno's argument are not entirely clear, it appears that Bueno is suggesting that either of two special exceptions, or some combination of those exceptions, demonstrates that the Legislature intended to prohibit his conviction for conspiracy to deliver a cellular telephone to an inmate under section 4576, subdivision (a).  In his opening brief, Bueno argues that a rule analogous to the "buyer-seller rule," recognized by some federal courts, applies to preclude him from being held criminally liable for conspiring to violate subdivision (a) of section 4576.  The

8

"buyer-seller rule," as adopted by the Ninth Circuit, for example, precludes conspiracy liability where the *only* relationship between the alleged conspirators is that of a buyer and a seller of controlled substances. (See *U.S. v. Lennick* (9th Cir. 1994) 18 F.3d 814, 819 ["We therefore hold that in the Ninth Circuit, as in other circuits, mere sales to other individuals do not establish a conspiracy to distribute or possess with intent to distribute; rather the government must show that the buyer and seller had an agreement to further distribute the drug in question"].) According to Bueno, section 4576 contemplates an "implied complicity contract between deliverer and inmate receiver of [a] cell phone." He analogizes the offense set out in section 4576 to drug sale and distribution offenses where complicity in an agreement to commit the offense is inherent in the offense itself, rendering a charge of "conspiracy" to commit the substantive offense unavailable. Thus, Bueno contends, what has become known as the "buyer-seller rule" provides an apt analogy to the offense set out in section 4576.[6]

---

[6] Bueno also references in his briefing a separate recognized exception to the general principle that conspiracy and the substantive offense can be punished separately—i.e., "Wharton's Rule." In its updated form, Wharton's Rule states that "[a]n agreement between two persons to commit an offense does not constitute conspiracy when the target offense is so defined that it can be committed only by the participation of two persons." (4 Charles E. Torcia, Wharton's Criminal Law § 684 (15th ed. 1996).) In *Iannelli*, the United States Supreme Court recognized that the rule "has current vitality only as a judicial presumption, to be applied in the absence of legislative intent to the contrary. The classic Wharton's Rule offenses—adultery, incest, bigamy, duelling—are crimes that are characterized by the general congruence of the agreement and the completed substantive offense. The parties to the agreement are the only persons who participate in commission of the substantive offense, and the immediate consequences of the crime rest on the parties themselves rather than on society at large. [Citation.] Finally, the agreement that attends the substantive offense does not appear likely to pose the distinct kinds of threats to society that the law of conspiracy seeks to

Bueno concedes that no California court has expressly adopted the "buyer-seller rule" with respect to cases involving drug sales or distribution, much less with respect to the target offense of the conspiracy charged in this case.  Although Bueno acknowledges that there is no California case law adopting the "buyer-seller rule" to preclude prosecution of a purchaser of drugs for conspiracy to sell or distribute drugs to himself, Bueno nevertheless urges application of something akin to this rule here, relying on the fact that the Ninth Circuit Court of Appeals and other federal circuit courts have adopted the "buyer-seller rule" as representing a failure of proof of a conspiracy to sell drugs.  (See *United States v. Loveland* (9th Cir. 2016) 825 F.3d 555, 561; see also *United States v. Moe* (9th Cir. 2015) 781 F.3d 1120, 1124; *United States v. Brown* (7th Cir. 2013) 726 F.3d 993, 998.)

In arguing that a rule like the "buyer-seller rule" should apply to bar his conspiracy conviction, Bueno also notes that even though the "buyer-seller rule" has not been adopted in California to prohibit conspiracy convictions for purchasers of drugs, there are California authorities that have concluded that a purchaser of drugs cannot be prosecuted as an *accomplice* to the person who sold the drugs.  (See *People v. Hernandez* (1968) 263 Cal.App.2d 242, 247; see also, *People v. Label* (1974) 43 Cal.App.3d 766, 770–771 ["The purchaser is not an accomplice of the seller either as to illegal possession or as to sale"].)

---

avert.  It cannot, for example, readily be assumed that an agreement to commit an offense of this nature will produce agreements to engage in a more general pattern of criminal conduct." (*Iannelli, supra,* 420 U.S. at pp. 782–784, fns. omitted.)

Although Bueno mentions Wharton's Rule in his briefing, he acknowledges that this case does not present a "classic Wharton's [Rule] case," and thereby concedes that cases involving Wharton's Rule are inapplicable.  We agree with Bueno that Wharton's Rule does not apply to the conspiracy at issue here, because a violation of a subdivision (a) of section 4576 does not require the participation of two persons.

10

A similar rule, regarding who may be considered an accomplice, applies in the context of stolen property: "It is now settled in this state that the thief and the receiver of stolen property are not accomplices." (*People v. Lima* (1944) 25 Cal.2d 573, 576 (*Lima*).) The *Lima* court explained:

> "This is so, because the receiver *usually has no part in the theft, directly or indirectly*, and the criminal act of knowingly receiving the stolen property occurs independently thereof and at a time subsequent to the completion of the asportation. And conversely, it has been said that, inasmuch as a thief cannot receive from himself, he cannot be an accomplice of the receiver. The thief and the receiver are therefore generally said to be guilty of separate and distinct substantive offenses, and not being 'liable to prosecution for the identical offense' are not accomplices within the meaning of that term as defined in section 1111 of the Penal Code." (*Id.* at pp. 576–577.)

The *Lima* court's description of the rule demonstrates precisely why application of a similar rule in this case would be inappropriate, beyond the fact that neither the rule regarding accomplices nor the "buyer-seller rule" pertaining to conspiracies has been applied in the context of delivery of a cellular telephone to an inmate, generally.

Quoting 2 Wharton's Criminal Evidence 1248–1250, section 741, the *Lima* court explained that " 'an exception to this general rule [that the thief and the receiver cannot be prosecuted for identical offenses and are therefore not accomplices] has ensued *where the thief and the receiver of stolen property conspire together in a prearranged plan for one to steal and deliver the property to the other*, and pursuant to such plan one does steal and deliver to the other; it is held in this case that the receiver is an accomplice of the thief, and the thief is an accomplice of the receiver.' " (*Lima, supra*, 25 Cal.2d at p. 577, italics added.) *"When there has been a conspiracy or prearranged plan*

11

*between the thief and the receiver*, the *conspirators have been held to be accomplices . . . .*" (*Id.* at p. 578, italics added.)

Thus, even if we were to apply the California rules regarding accomplice liability to Bueno's conviction for conspiracy, these rules would not require reversal of Bueno's conviction because the exception to the general rule of no accomplice liability where there is a "conspiracy or prearranged plan" (*Lima, supra*, 25 Cal.2d at p. 578) would apply. Bueno's admission that he had a *prearranged plan* with Morlett for Morlett to obtain and deliver a cellular telephone to Bueno, an inmate, establishes that Bueno was not merely a receiver; rather, he participated in developing the plan whereby he enlisted a third party to pay Morlett so that Morlett would obtain a cellular telephone for the express purpose of bringing it inside the penal institution to deliver it to Bueno.[7] Therefore, the law on which Bueno relies—the law regarding accomplice liability—simply would not apply to preclude his conviction for conspiracy to violate section 4576, subdivision (a).

Bueno's other argument is that the Penal Code spells out "a tiered system of punishment based on the role that each person play[s] in the delivery of the cell phone," and that a "receiver/possessor [of a cellular telephone] is subject to [a maximum] 90-day[ ] loss of credits."[8] According to Bueno, the statutory scheme does not contemplate the possibility that he, as the inmate recipient of the cellular telephone, could be convicted of, and

---

[7] This was not a situation where Morlett already possessed the cellular telephone inside the prison and then offered to sell it to Bueno.

[8] Bueno is referring to subdivision (c) of section 4576, which provides, "Any inmate who is found to be in possession of a wireless communication device shall be subject to time credit denial or loss of up to 90 days."

12

punished for, a conspiracy to commit the offense outlined in subdivision (a) of section 4576.[9] Bueno suggests that the framework of section 4576 indicates a legislative intent to "penalize inmate possessors of cell phones less severely than those who deliver cell phones to them." (Boldface omitted.) Specifically, Bueno notes that subdivision (a) of section 4576 makes it a misdemeanor punishable by up to six months in local custody for any person to " 'possess[ ] with the intent to deliver' " or to " 'deliver[ ], to an inmate . . . any cellular telephone,' " while subdivision (c) of section 4576 provides only for a "time credit denial or loss of up to 90 days" for an inmate who is found in possession of a cellular telephone. According to Bueno, this construction demonstrates that the Legislature did not "make possession of a cell phone by a state prison inmate a crime" and contends that one should infer from this provision that the Legislature "intend[ed] to penalize inmates possessing cell phones less severely than those delivering cell phones to them."

While it is true that the Legislature did not make mere possession of a "wireless communication device" by an inmate a crime, and instead provided for punishment of this conduct through a noncriminal loss of credits, Bueno fails to acknowledge that the facts to which he admitted demonstrate that he did *more than* merely possess a cellular telephone while in custody; he entered into an agreement with Morlett, pursuant to which Morlett would

---

[9] Although Bueno does not fully articulate this argument in his opening brief, and instead addresses this contention in his reply brief, we will nevertheless consider the argument for two reasons. First, Bueno arguably raises the specter of this contention in his opening brief by providing a full account of this argument as it was presented to the trial court. Second, the People's respondent's brief sets out a separate argument heading regarding this contention and addresses the contention on its merits, without suggesting that Bueno forfeited the argument by not clearly making the argument in his opening brief. The People will therefore suffer no prejudice from our consideration of the argument on its merits.

obtain a cellular telephone for the specific purpose of delivering it to Bueno. This is not a situation in which Morlett, on his own, brought a cellular telephone into the prison without prior inducement to do so, and simply offered Bueno the opportunity to purchase that cell phone. Rather, there was a collaborative effort between Bueno and Morlett, in which the pair involved a third party (Bueno's wife); this scenario thereby implicates the very concerns that form the rationale for permitting greater criminal punishment for conspiracies than for individual criminal conduct:

> " 'Criminal liability for conspiracy, separate from and in addition to that imposed for the substantive offense which the conspirators agree to commit, has been justified by a "group danger" rationale. The division of labor inherent in group association is seen to *encourage the selection of more elaborate and ambitious goals* and *to increase the likelihood that the scheme will be successful*. Moreover, the moral support of the group is seen as strengthening the perseverance of each member of the conspiracy, thereby acting to discourage any reevaluation of the decision to commit the offense which a single offender might undertake. And even if a single conspirator reconsiders and contemplates stopping the wheels which have been set in motion to attain the object of the conspiracy, a return to the status quo will be much more difficult since it will entail persuasion of the other conspirators.' " (*Tatman, supra*, 20 Cal.App.4th at p. 8, italics added.)

We see no indication in the statutory framework for possession of wireless devices by an inmate that suggests that the Legislature did not intend to permit greater punishment for inmates who, through a collaborative criminal endeavor, aim to ensure that a prohibited item is introduced into the prison setting.

The People rely heavily on the authority of *Lee, supra*, 136 Cal.App.4th 522 in support of their assertion that the statutory framework does *not*

14

indicate that the Legislature intended to insulate inmates from liability for conspiracy to commit a substantive offense for which the inmate could not be held independently liable. The defendant in *Lee* was convicted of conspiracy to commit a violation of section 4573.9, subdivision (a), which provides that "any person, *other than a person held in custody*," is guilty of violating this section if that individual furnishes a controlled substance "to any person held in custody in any state prison." (Italics added.) Lee, an inmate, argued not only that he could not be convicted of violating section 4573.9 directly, but also, that he "could not properly be charged with, or convicted of, conspiracy because the language of section 4573.9 specifically precludes him from punishment and, inasmuch as other statutes provide for lesser punishment for inmates, to apply the law of conspiracy under the circumstances present here would run contrary to the expressed legislative intent." (*Lee*, at p. 528.) The appellate court rejected Lee's contentions, concluding that "nothing in the legislative history of section 4573.9 or in the overall statutory scheme suggests the Legislature intended to exempt from this increased penalty *those inmates who actively join with noninmates in a criminal conspiracy* to introduce controlled substances into prison," and that "[t]o hold otherwise would lead to the absurd result of an incarcerated drug kingpin, using noninmate 'mules' to smuggle into prison contraband that is then sold to other inmates in a profit-making business enterprise, and yet [the kingpin would] escap[e] the increased penalties to which the 'mules,' who operate at his or her direction, are subject." (*Id.* at pp. 537–538.) The *Lee* court further noted that what amounts to a "[drug] smuggling operation makes it much more likely there will be further distribution within the prison," even though the drugs being brought into the prison setting may have initially been "intended merely for the recipient inmate's personal use." (*Id.* at p. 537.)

15

It is not clear that a conspiracy to bring a single cellular telephone into a prison setting creates the same sort of risk of further distribution that the smuggling of drugs into a prison creates. However, we nevertheless conclude, as the *Lee* court concluded with respect to section 4573.9, that the legislative scheme set forth in section 4576 does not demonstrate that the Legislature intended for an inmate such as Bueno to be punished less severely than Morlett for his role in the cooperative plan between the two of them to ensure that Bueno would obtain a cellular telephone through Morlett's conduct. The legislative design demonstrates that the Legislature provided for lesser punishment under subdivision (c) of section 4576 for an inmate who has *not actively participated in a collaborative plan* to ensure that someone else brings a cellular telephone into the prison but who nevertheless ends up in possession of such a device; it does not suggest that an inmate may never be convicted of a conspiracy to commit a violation of subdivision (a) of section 4576.

## IV.

## DISPOSITION

The judgment of the trial court is affirmed.

AARON, J.

WE CONCUR:

McCONNELL, P. J.

HALLER, J.

16